**Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000069
04-SEP-2019
08:10 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

SCOTT SPITTLER, Plaintiff/Counterclaim Defendant-Appellant,
v.
PAUL R. CHARBONNEAU, JANICE CHARBONNEAU, Defendants/Counterclaim
Plaintiffs-Appellees,
and
ELIZABETH THERESA SCHMIDT, Defendant/Cross-Claim Defendant/Cross-
Claimant,
and
DOE 2 Through DOES 20, Defendants

NO. CAAP-16-0000069

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 3CC09-1-0007)

SEPTEMBER 4, 2019

FUJISE, PRESIDING JUDGE, CHAN AND HIRAOKA, JJ.

OPINION OF THE COURT BY HIRAOKA, J.

This case arose from a dispute between neighbors over plants. Plaintiff-Appellant Scott Spittler (**Spittler**) appeals from the First Amended Final Judgment (**Judgment**) entered by the Circuit Court of the Third Circuit (**Circuit Court**)[1] on January 8,

---

[1] The Honorable Greg K. Nakamura presided.

2016, and the order partially granting and partially denying a motion for partial summary judgment filed by Defendants-Appellees Paul R. Charbonneau and Janice Charbonneau (collectively, the **Charbonneaus**) entered by the Circuit Court on August 2, 2013 (**PSJ Order**).[2]  For the reasons explained below, we affirm the Judgment.

## I.

Spittler and the Charbonneaus own adjoining property in Kapoho on Hawaiʻi island.  They disputed the location of their common boundary.  On January 8, 2009, Spittler filed a "Complaint for Trespass and Damages" against the Charbonneaus.  The complaint alleged that between 1984 and 2006 the Charbonneaus planted a number of ironwood,[3] loulu palm,[4] and coconut palm trees, some of which were planted on Spittler's property. Spittler claimed that the Charbonneaus agreed to remove their trees from Spittler's property and to be bound by a neutral survey of the boundary between the parties' properties, but have not done so.  On July 23, 2007, a branch from one of the Charbonneaus' trees allegedly fell, struck Spittler, and damaged Spittler's greenhouse covering.  Spittler's complaint alleged that the Charbonneaus' trees have "an extensive root system, have created a poor growing environment, and continue to present danger to person, real property, and agricultural products of [Spittler]."  Spittler also claimed that Paul Charbonneau

---

[2]     Defendant/Cross-Claim Defendant/Cross-Claimant Elizabeth Theresa Schmidt, the former co-owner of Spittler's property, is not a party to this appeal.

[3]     "Ironwood" is the name commonly given in Hawaiʻi to trees of the Casuarina family, native to Australia and so called because of their very hard wood.  They are commonly used as windbreaks, such as along the Kohala Mountain Road on Hawaiʻi island, at Waimānalo, Oʻahu, and Hanalei, Kauaʻi, near the pier.  Elbert L. Little, Jr. & Roger G. Skolmen, U.S. Dept. of Agric., Common Forest Trees of Hawaii 86-92 (1989), http://www.hear.org/books/cftoh1989/pdfs/cftoh1989.pdf.

[4]     Loulu, of the genus Pritchardia, is a medium-sized fanpalm native to Hawaiʻi.  Common Forest Trees of Hawaii at 82-84.

screamed profanities and called the police after Spittler pruned coconut fronds that were hanging into Spittler's property. The complaint listed the following causes of action: (1) trespass to property; (2) breach of contract; (3) breach of implied covenant of good faith and fair dealing; (4) negligence; (5) misrepresentation; (6) unfair and deceptive trade practices; (7) punitive damages;[5] (8) nuisance; (9) detrimental reliance; (10) intentional infliction of emotional distress; and (11) quiet title.

On January 29, 2009, the Charbonneaus filed an answer and a counterclaim. They alleged that they acquired their property in 1980; their ironwood trees were planted in 1983 "as a windbreak under a program administered by the U.S. Department of Agriculture, Soil Conservation Service"; Spittler acquired his property in 1999; in 2006 Spittler claimed to own the land on which the Charbonneaus' ironwood trees were planted and demanded that the trees be removed; and since 2007 Spittler has trespassed on the Charbonneaus' property, cut down and killed numerous ironwood and palm trees, and directed loud music and noise toward the Charbonneaus' property to interfere with the Charbonneaus' use and enjoyment of their property. The counterclaim also alleges that in November 2008 Spittler fired a rifle from his property at Paul Charbonneau, who was standing on his own property. The counterclaim listed the following causes of action: (1) quiet title; (2) injunctive relief; (3) intentional, reckless, or negligent destruction of property; and (4) punitive damages[6].

On June 13, 2013, the Charbonneaus filed a motion for partial summary judgment on the first (trespass) and eighth (nuisance) counts of Spittler's complaint. Spittler's opposition was filed on July 3, 2013, and an errata was filed on July 10,

---

[5]    "[A] claim for punitive damages is not an independent tort, but is purely incidental to a separate cause of action." Ross v. Stouffer Hotel Co. (Hawaiʻi), 76 Hawaiʻi 454, 466, 879 P.2d 1037, 1049 (1994) (citation omitted).

[6]    See Ross, 76 Hawaiʻi at 466, 879 P.2d at 1049 (punitive damages is not an independent tort).

2013. The Charbonneaus' reply was filed on July 9, 2013. The motion was heard on July 11, 2013.[7] The PSJ Order was entered on August 2, 2013; the order contained the following provisions relevant to this appeal:

> The Court finds as follows:
>
> . . . .
>
> 2. With respect to the issue regarding branches, leaves and roots, the uncontroverted material facts are that trees are located on the Charbonneau property but the branches [and] leaves from those trees overhang onto the [Spittler] property, and the leaves from the trees may fall from those trees onto the [Spittler] property and the roots from those trees might intrude into the [Spittler] property. These intrusions only interfere with plant life on the [Spittler] property. Under Whitesell v. Houlton, 2 Haw. App. 365, 632 P.2d 1077 (1981), [Spittler]'s claims for relief based on trespass are not appropriate. Further the intrusion by way of overhanging branches, leaves and roots into the [Spittler] property that results in damage to plant life is not a nuisance and not compensable.
>
> Based upon the above findings
>
> IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:
>
> . . . .
>
> 2. [The Charbonneaus'] motion for partial summary judgment seeking to dismiss that portion of the First Cause of Action of Spittler's Complaint . . . alleging trespass caused by the intruding roots, branches and leaves onto the [Spittler] property from trees and plants on [the Charbonneaus'] property[] is hereby granted, and that portion of the First Cause of Action of Spittler's Complaint . . . [is] hereby dismissed.
>
> 3. [The Charbonneaus'] motion for partial summary judgment seeking to dismiss the Eighth Cause of Action [of] Spittler's Complaint . . . alleging nuisance caused by the intruding roots, branches and leaves onto the [Spittler] property from trees and plants on [the Charbonneaus'] property[] is hereby granted, and the Eighth Cause of Action of Spittler's Complaint . . . [is] hereby dismissed.

The parties eventually agreed to a partial settlement of all claims except counts one (trespass) and eight (nuisance) — which were the subjects of the PSJ Order — and eleven (quiet title) of Spittler's complaint. The terms of the settlement were

---

[7] The record on appeal does not contain a transcript of the hearing.

placed on the record on July 30, 2013. A stipulation for entry of a judgment was filed on February 4, 2014; the stipulation recited a resolution of the quiet title claim based on a land survey and an existing boundary pin. A judgment was filed on February 26, 2014. Spittler filed a notice of appeal but we dismissed the appeal for lack of appellate jurisdiction. The First Amended Final Judgment was entered on January 8, 2016. This appeal followed.

## II.

### Standard of Review

An appellate court reviews a trial court's grant or denial of summary judgment de novo using the same standard applied by the trial court. Nozawa v. Operating Engineers Local Union No. 3, 142 Hawai'i 331, 338, 418 P.3d 1187, 1194 (2018). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Id. at 342, 418 P.3d at 1198 (citations and brackets omitted).

### Issues Presented

The parties do not dispute that branches of trees located on the Charbonneaus' property hang over Spittler's property, that leaves falling from those trees land on Spittler's property, and that the roots of those trees have grown into Spittler's property. This appeal presents two legal issues: (1) do those conditions constitute a nuisance for which the Charbonneaus are liable to Spittler; and (2) do those conditions constitute a trespass by the Charbonneaus upon Spittler's property?

### Nuisance

In a state known for its lush foliage, there appears to be only one reported appellate decision, Whitesell v. Houlton, 2 Haw. App. 365, 632 P.2d 1077 (1981), addressing when a plant that naturally encroaches upon a neighboring property can constitute a nuisance.[8]  In Whitesell, branches of a banyan[9] tree located on Houlton's property overhung the Whitesells' property.  The Whitesells rented equipment and cut the intruding branches.  After a storm damaged the tree, the Whitesells hired a professional tree trimmer who cut the branches back to Houlton's property line.  The Whitesells sought to recover their costs from Houlton.  Houlton contended he had no duty to cut the branches extending into the Whitesells' property and was therefore not liable for the cost of doing so.  We surveyed cases from a number of other jurisdictions and noted that "[i]t has long been the rule in [Hawai'i] that if the owner knows or should know that [their] tree constitutes a danger, [they are] liable if it causes personal injury or property damage on or off of [their] property."  Id. at 367, 632 P.2d at 1079 (citation omitted).  We then adopted a modified version of the Virginia rule set forth in Smith v. Holt, 174 Va. 213, 5 S.E.2d 492 (1939), overruled in part by Fancher v. Fagella, 274 Va. 549, 554, 650 S.E.2.d 519, 521 (2007).  We held:

> [N]on-noxious plants ordinarily are not nuisances[.]
> [O]verhanging branches which merely cast shade or drop
> leaves, flowers, or fruit are not nuisances[.]  [R]oots
> which interfere only with other plant life are not
> nuisances[.]  [O]verhanging branches or protruding roots
> constitute a nuisance only when they actually cause, or
> there is imminent danger of them causing, sensible harm to
> property other than plant life, in ways other than by

---

[8]     In Medeiros v. Honomu Sugar Co., 21 Haw. 155 (1912), the plaintiff was injured when a tree fell onto a public highway where the plaintiff was operating a horse-drawn hearse.  The cause of action was for negligence, not nuisance.

[9]     "A 'banyan' tree is a large evergreen tree of the fig family (moraceae).  Generally, its branches send out aerial roots which grow down to the soil to form secondary trunks."  Whitesell, 2 Haw. App. at 365 n.1, 632 P.2d at 1078 n.1.

> casting shade or dropping leaves, flowers, or fruit[.]
> [W]hen overhanging branches or protruding roots actually
> cause, or there is imminent danger of them causing, sensible
> harm to property other than plant life, in ways other than
> by casting shade or dropping leaves, flowers, or fruit, the
> damaged or imminently endangered neighbor may require the
> owner of the tree to pay for the damages and to cut back the
> endangering branches or roots and, if such is not done
> within a reasonable time, the damaged or imminently
> endangered neighbor may cause the cutback to be done at the
> tree owner's expense.

2 Haw. App. at 367-68, 632 P.2d at 1079. Under Whitesell the
Charbonneaus' trees could be considered a nuisance if: (1) they
were "noxious"; or (2) they caused, or there was an imminent
danger of them causing, "sensible harm"[10] to property other than
plant life other than by "casting shade or dropping leaves,
flowers, or fruit." Id.

The Virginia Supreme Court subsequently cited Whitesell
in adopting what it referred to as the "Hawaii Rule," which
"holds that living trees and plants are ordinarily not nuisances,
but can become so when they cause actual harm or pose an imminent
danger of actual harm to adjoining property." Fancher, 274 Va.
at 554, 650 S.E.2d at 521. The Virginia court noted that the
"Virginia Rule" had been "subject to the just criticism that the
classification of a plant as 'noxious' depends upon the viewpoint
of the beholder." Id. at 555, 650 S.E.2d at 522. The court then
overruled Smith v. Holt "insofar as it conditions a right of
action upon the 'noxious' nature of a plant that sends forth
invading roots or branches into a neighbor's property." Id.

In Whitesell we did not define the word "noxious" or
formulate a test to determine when a plant could be considered
"noxious." The difficulty inherent with characterizing a plant
as "noxious" is illustrated by this case. Spittler argues that
ironwood trees are "noxious" based upon a "high risk" rating of
"12" contained in the Hawaii Pacific Weed Risk Assessment web-

---

[10] The phrase "sensible harm" comes from Smith v. Holt, in which the
Virginia Supreme Court stated "there must be not merely a nominal but such a
sensible and real damage as a sensible person, if subjected to it, would find
injurious[.]" 174 Va. at 215, 5 S.E.2d at 493 (citation omitted).

site.[11]  That website does not use the word "noxious" and states only that the "small-cone ironwood" is "[u]sed in [Hawai'i] for windbreaks at higher elevations.  Wood used for fuel."  It does not indicate that the ironwood is "physically harmful or destructive to living beings," which is the definition of "noxious" contained in the Merriam-Webster dictionary.[12]  Hawai'i cases have characterized gorse,[13] lantana,[14] and klu[15] as "noxious weeds."  Each of those plants (unlike the ironwood) has thorns that pose the potential for causing injury to animals or people. Yet, of those plants only gorse appears in the "List of Plant Species Designated as Noxious Weeds for Eradication or Control Purposes"[16] maintained by the Hawai'i Department of Agriculture pursuant to Hawaii Administrative Rules (**HAR**) § 4-68-10(e) (eff.

---

[11]    Hawaii-Pacific Weed Risk Assessment,  Jul. 12, 2012, 8:20 AM. Casuarina Cunninghamiana.  www.hpwra.org (last visited Aug. 23, 2019).

[12]    Noxious, Merriam-Webster, https://www.merriam-webster.com/dictionary/noxious (last updated Aug. 22, 2019).

[13]    Freddy Nobriga Enter., Inc. v. State, Dep't of Hawaiian Home Lands, 129 Hawai'i 123, 127, 295 P.3d 993, 997 (App. 2013).  Gorse (Ulex europaeus) is a compact shrub bearing many branches that have been modified into sharp spines or thorns that can penetrate clothing, snap off in the flesh, and produce burning, painful sores.  Edward Y. Hosaka & Alan Thistle, University of Hawai'i, Noxious Plants of the Hawaiian Ranges 17-18 (1954), http://www.hear.org/articles/npothr1954/npothr1954_hires.pdf.

[14]    Paris v. Vasconcellos, 14 Haw. 590 (1903).  Lantana (Lantana camara) is a woody shrub.  Noxious Plants of the Hawaiian Ranges at 24.  It has been described as

> a thorny bush of rapid growth, able to withstand success-
> fully long periods of [drought].  It bears a large quantity
> of seeds and these are freely scattered by birds, wind and
> water, all agencies beyond the control of [humans].  Once it
> has entered a section of the country, it spreads rapidly,
> and finally, if left to itself, forms a dense, tangled mass.

Paris, 14 Haw. at 594.  See also Sylva v. Wailuku Sugar Co., 19 Haw. 681, 688 (1909).

[15]    Christian v. Waialua Agric. Co., 33 Haw. 34, 41 (1934).  Klu (Acacia farnesiana) is a branching shrub that "is a pest in pastures because of its long needle-like thorns.  Even the animals avoid this plant."  Noxious Plants of the Hawaiian Ranges at 23-24.

[16]    HAR § 4-68-10 at 68-10 through 68-14, http://hdoa.hawaii.gov/wp-content/uploads/2012/12/Chapter-68.pdf.

1992).[17] Ironwood trees do not appear in the HAR § 4-68-10(e) list, nor are they mentioned in Hosaka's and Thistle's monograph, Noxious Plants of the Hawaiian Ranges (Univ. of Haw. 1954).

Our use of the word "non-noxious" in Whitesell was superfluous. A noxious plant — i.e., one that is "physically harmful or destructive to living beings" — is one that actually causes, or that could pose an imminent danger of causing, material harm to persons or to property other than plant life; conversely, a plant that actually causes, or that poses an imminent danger of causing, material harm to persons or property other than plant life may be considered noxious. We note that certain plants, such as coconut palms, are capable of causing material injury to persons or to property other than plant life just by dropping fronds or nuts. We also note that tree roots can, under some circumstances, pose imminent trip hazards without damaging property other than plant life. We therefore modify our holding in Whitesell for when a plant can be considered a nuisance. Plants whose overhanging branches cast shade or drop leaves, flowers, or fruit, or whose roots interfere only with other plant life, are not nuisances. Overhanging branches or protruding roots constitute a nuisance when they actually cause, or there is imminent danger of them causing, material harm to a person or to property other than plant life. When overhanging branches or protruding roots actually cause, or there is imminent danger of them causing, harm to a person or to property other than plant life, the damaged or imminently endangered neighbor may require the tree's owner to pay for the damage and to cut

---

[17]     HAR § 4-68-10 provides, in relevant part:

> Procedure for the designation of noxious weeds. (a) The head [of the state Department of Agriculture's division of plant industry] shall direct a continuous program of study and evaluation of potential noxious weed species.
>
> . . . .
>
> (e)     The list of plant species designated as noxious weeds, adopted by the board on June 18, 1992, and located at the end of this chapter is made a part of this section.

back the endangering branches or roots and, if that is not done within a reasonable time, the damaged or imminently endangered neighbor may cause the cutback to be done at the tree owner's expense.  And as we stated in Whitesell, "a landowner may always, at [their] own expense, cut away only to [their] property line above or below the surface of the ground any part of the adjoining owner's trees or other plant life."  2 Haw. App. at 368, 632 P.2d at 1079.

In this case, the parties dismissed Spittler's claim arising from the branch from one of the Charbonneaus' trees allegedly falling, striking Spittler, and damaging Spittler's greenhouse covering.  The only dispute before us concerns "overhanging branches which merely cast shade or drop leaves, flowers, or fruit," and "roots which interfere only with other plant life."  Under those facts, the Charbonneaus' trees do not constitute a nuisance and the Circuit Court did not err in granting partial summary judgment on the eighth count of Spittler's complaint.

### Trespass

The parties do not cite, nor have we found, a reported Hawaiʻi appellate decision reciting the elements of the tort of trespass.  However, in cases involving claims of trespass we have referred to the Restatement (Second) of Torts (**Restatement**).  See Anderson v. State, 88 Hawaiʻi 241, 247, 965 P.2d 783, 789 (App. 1998) (citing Restatement § 161 (Am. Law Inst. 1965)); Memminger v. Summit at Kāneʻohe Bay Ass'n, No. 30383, 2013 WL 2149732 (Haw. App. May 17, 2013) (SDO) (citing Restatement § 158 (Am. Law Inst. 1965)).  Restatement § 158 states:

> One is subject to liability to another for trespass, irrespective of whether [they] thereby cause[] harm to any legally protected interest of the other, if [they] intentionally

(a)     enter[] land in the possession of the other, or
cause[] a thing or a third person to do so, or

(b)     remain[] on the land, or

(c)     fail[] to remove from the land a thing which
[they are] under a duty to remove.

Restatement § 161 states:

(1)   A trespass may be committed by the continued presence
on the land of a structure, chattel, or other thing which
the actor has tortiously placed there, whether or not the
actor has the ability to remove it.

(2)   A trespass may be committed by the continued presence
on the land of a structure, chattel, or other thing which
the actor's predecessor in legal interest therein has
tortiously placed there, if the actor, having acquired
[their] legal interest in the thing with knowledge of such
tortious conduct or having thereafter learned of it, fails
to remove the thing.

Restatement § 6 (Am. Law Inst. 1965) states:

The word "tortious" is used throughout the Restatement of
this Subject to denote the fact that conduct whether of act
or omission is of such a character as to subject the actor
to liability under the principles of the law of Torts.

Finally, Restatement § 166 (Am. Law Inst. 1965) states:

Except where the actor is engaged in an abnormally dangerous
activity, an unintentional and non-negligent entry on land
in the possession of another, or causing a thing or third
person to enter the land, does not subject the actor to
liability to the possessor, even though the entry causes
harm to the possessor or to a thing or third person in whose
security the possessor has a legally protected interest.

Accordingly, we hold that a person whose plant, located on the
person's property, drops leaves, flowers, or fruit onto
neighboring property, or whose plant's roots interfere only with
other plant life on neighboring property, is not liable to the
neighboring property owner for trespass.[18]  Although the Circuit
Court did not rely upon the Restatement to grant partial summary

---

[18]     If that person's plant causes physical harm to a person, or damage
to property, located on neighboring property, the person would be potentially
liable in tort to the injured person or to the owner of the damaged property.
See Medeiros, 21 Haw. 155.

judgment to the Charbonneaus on the first count of Spittler's complaint, the Circuit Court reached the correct result. An appellate court "may affirm a grant of summary judgment on any ground appearing in the record, even if the circuit court did not rely on it." <u>Reyes v. Kuboyama</u>, 76 Hawai'i 137, 140, 870 P.2d 1281, 1284 (1994).

## III.

For the foregoing reasons, the First Amended Final Judgment entered by the Circuit Court of the Third Circuit on January 8, 2016, is affirmed.

On the briefs:

Brooks L. Bancroft
for Plaintiff/Counterclaim
Defendant-Appellant.

Robert J. Crudele
for Defendants/Counterclaim
Plaintiffs-Appellees.